UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DREW RANKIN *et al.*,<br>*Defendants*. | No. 3:18-cr-00272 (JAM) |

**ORDER GRANTING GOVERNMENT'S MOTION TO COMPEL
AND GRANTING AMENDED MOTION FOR ENTRY OF STIPULATED
PROTECTIVE ORDER**

This is a discovery dispute that arises in the context of a federal criminal prosecution. The heart of the dispute is about whether a criminal defendant who used to work as the chief financial officer for a company may assert a claim of attorney-client privilege in the company's documents. Following well-settled federal law, I conclude that the defendant has no personal or shared claim of privilege in the company's documents absent any showing that he established a personal attorney-client relationship with company counsel. Therefore, the Government is entitled to enforce its subpoena against the company in the absence of any claim of privilege by the company itself. Similarly, I conclude that the company may validly disclose its documents to the defendants as well as to the Government subject to the disclosure-is-not-a-waiver terms of a protective order under Fed. R. Evid. 502(d).[1]

---

[1] Rule 502 of the Federal Rules of Evidence sets forth certain provisions to govern "disclosure of a communication or information covered by the attorney-client privilege or work-product protection," and Rule 502(d) specifically provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." As the parties note, although some of the documents at issue may be subject to a claim of work-product privilege rather than attorney-client privilege, this distinction has no bearing on this discovery dispute.

1

**BACKGROUND**

A federal grand jury has charged five defendants with conspiring to and misappropriating funds for personal purposes, in violation of 18 U.S.C. § 371 and § 666(a)(1)(A). The charges stem from the defendants' former roles as officers or directors of the Connecticut Municipal Electric Energy Cooperative ("CMEEC"), a public corporation created to provide low-cost electric power for certain member towns. *See generally United States v. Rankin*, 422 F. Supp. 3d 564, 573-77 (D. Conn. 2019) (summarizing the charges). Among the five defendants in this action is Edward Pryor, who used to serve as CMEEC's chief financial officer but who no longer works for the company.

The Government has moved to compel CMEEC to produce documents that are responsive to previously-issued grand jury subpoenas and that include certain documents already produced by CMEEC to Pryor as well as to co-defendant Drew Rankin subject to the terms of a Rule 502(d) protective order. Doc. #211; *see also* Docs. #201, #208. CMEEC has listed the documents at issue on its privilege log but states that it is willing to produce them to the Government subject to the protections of a Rule 502(d) protective order. CMEEC has declined to do so, however, because Pryor objects on the ground that he is a joint client of the company's counsel with respect to any privileged communications to which he was a party while serving as an officer of CMEEC. Doc. #217.

Defendant Drew Rankin initially joined in Pryor's objection to the Government's motion to compel but has since withdrawn his objection. Doc. #234. No other defendant has claimed any privilege against CMEEC's disclosure of documents to the Government.

To the contrary, one of Pryor's co-defendants—John Bilda—has negotiated the disclosure of documents from CMEEC and agreed to CMEEC's production of these documents

to the Government as well. Bilda and CMEEC have jointly moved for entry of a Rule 502(d) protective order to accompany disclosure of these documents to Bilda and the Government. Doc. #243. Pryor, however, has separately objected to this additional disclosure on grounds that a Rule 502(d) order would be ineffective to forestall a waiver of CMEEC's corporate privilege as a result of the disclosure of privileged documents to the Government. Doc. #245. This ruling addresses both the Government's motion to compel (Doc. #211) as well as the joint motion of Bilda and CMEEC for entry of a Rule 502(d) protective order (Doc. #243).

## DISCUSSION

The federal common law of attorney-client privilege applies in federal criminal cases. *See* Fed. R. Evid. 501; *In re Grand Jury Investigation*, 399 F.3d 527, 530 (2d Cir. 2005); *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 557-58 & n.11 (S.D.N.Y. 1996). In view that "entities can act only through agents," it is well-established under federal law "that any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the individual employee, and that employees generally may not prevent a corporation from waiving the attorney-client privilege arising from such communications." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 215 (2d Cir. 1997).

Put differently, "where a corporation waives its privilege but an officer wishes to assert that privilege as to his communications with corporate counsel," the privilege is nonetheless waived because "the privilege belongs to the corporation, not to the agent." *In re Grand Jury Proceedings*, 219 F.3d 175, 185 (2d Cir. 2000) (citing *Teamsters*, 119 F.3d at 215). By the same token, "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *United States v. Quest*

*Diagnostics Inc.*, 734 F.3d 154, 167 (2d Cir. 2013) (quoting *Commodity Futures Trading Comm'n. v. Weintraub*, 471 U.S. 343, 349 (1985)).

Notwithstanding this precedent, Pryor argues that he is a "joint client" with CMEEC for purposes of the attorney-client relationship with CMEEC counsel. But for an individual officer of a company to invoke the attorney-client privilege as to his communications with the company's counsel, the officer must show that he established a *personal* attorney-client relationship with company counsel. That is, he must show at the least that he "ma[de] it clear to corporate counsel that he seeks legal advice on personal matters in order to assert a privilege over ensuing communications with corporate counsel." *Teamsters*, 119 F.3d at 215.[2]

Pryor does not try to make this showing. He does not show that he ever made clear to corporate counsel that he sought legal advice on personal—rather than corporate—matters. Instead of trying to meet this standard, Pryor relies on mostly out-of-circuit precedent to suggest that a "joint client" or "co-client" status may be presumed simply from his position as an officer of the company who was privy to confidential legal communications with corporate counsel. *See, e.g.*, *Kirby v. Kirby*, 1987 WL 14862, at *7 (Del. Ch. 1987) (surmising without citation that "[t]he directors are all responsible for the proper management of the corporation, and it seems

---

[2] In *Teamsters*, the Second Circuit recited several additional elements that the Third Circuit has held that an employee must show to establish a personal attorney-client privilege. *See* 119 F.3d at 215 (citing *In re Bevill, Breler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 125 (3d Cir. 1986)). These are commonly known as the "*Bevill* factors," and they require not merely that the corporate employee sought personal advice from corporate counsel but also in part that counsel agreed to render such personal advice despite any conflict with counsel's duty of loyalty to the company and that the substance of the communications did not concern matters within the company or the general affairs of the company. *See, e.g.*, *United States v. Graf*, 610 F.3d 1148, 1160 (9th Cir. 2010). The Second Circuit's ruling in *Teamsters* noted that other courts have not relied on the entire *Bevill* "formulation" while "nevertheless requir[ing] an employee to make it clear to corporate counsel that he seeks legal advice on personal matters in order to assert a privilege over ensuing communications with corporate counsel." *Ibid.* Even under this latter and less comprehensive standard, the Second Circuit in *Teamsters* concluded that "it is not disputed in the instant case that Nash neither sought nor received legal advice from CW & S on personal matters," such that he "may not prevent the Carey Campaign from disclosing his conversations with CW & S regarding corporate matters by asserting a personal claim of privilege." *Id.* at 215-16.

consistent with their joint obligations that they be treated as the 'joint client' when legal advice is rendered to the corporation through one of its officers or directors").

But that is not the federal law of attorney-client privilege as stated in the published rulings of the Second Circuit. On this issue of federal law, I will follow the Second Circuit rather than the Delaware Chancery Court or other jurisdictions. *See also Fitzpatrick v. Am. Int'l Grp., Inc.*, 272 F.R.D. 100, 106-09 (S.D.N.Y. 2010) (discussing how Delaware decision in *Kirby* is inconsistent with principles stated by the Second Circuit and the U.S. Supreme Court concerning the right of a corporate employee to claim the benefit of the attorney-client privilege for communications with corporate counsel); *Las Vegas Sands v. Eighth Jud. Dist. Ct.*, 130 Nev. 643, 651-56, 331 P.3d 905, 910-14 (2014) (rejecting *Kirby* and similar "collective corporate client" decisions).[3]

Pryor also cites a provision of the Restatement (Third) of the Law Governing Lawyers providing that a co-client may invoke the privilege absent a waiver by the client who made the communication. *See* Restatement (Third) of the Law Governing Lawyers § 75. But this argument begs the question whether Pryor is a "client" at all for purposes of any communications with company counsel. On this point, consistent with the federal common law rule as stated by the Second Circuit in *Teamsters*, the Restatement makes clear that "[b]y representing the organization, a lawyer does not thereby also form a client-lawyer relationship with all or any individuals employed by it or who direct its operations or who have an ownership or other beneficial interest in it, such as its shareholders." *Id.* § 96, cmt. b. Indeed, "[t]he general rule is

---

[3] I note that an unpublished ruling issued by the Second Circuit today states "that district courts within this Circuit have acknowledged the general 'doctrine that treats a director and a corporation as 'joint clients' of the company's attorneys for purposes of privilege claims.'" *Sampedro v. Silver Point Capital, L.P.*, --- Fed. Appx. ----, 2020 WL 2988693, at *2 (2d Cir. 2020) (quoting *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 104 (S.D.N.Y. 2009)). But the Second Circuit had no occasion to approve of this rule in view that it found that the rule by its terms did not apply. *Ibid.* Moreover, because this ruling is an unpublished summary order, it cannot detract from the published precedential rulings of the Second Circuit that are cited and discussed above.

that confidential communications between a lawyer for an organization and an employee or agent of the organization about a matter of interest to the organization does not thereby make the lawyer counsel for the associated person with respect to that person's own interests in the same matter." *Id.* § 14, rptr. note to cmt. f. Thus, despite Pryor's reliance on the Restatement for his claim of privilege, the Restatement supports the opposite position.

Pryor confuses the issue by arguing that company officers are "entitled to obtain their own communications from the time of their tenure at CMEEC, whether or not the communications are privileged." Doc. #217 at 7. Even assuming that Pryor has some right of access to company documents, the issue for purposes of the Government's motion to compel is whether Pryor has a personal attorney-client privilege that he may invoke to block CMEEC from producing company documents to the Government. He does not. And because he has no privilege with respect to CMEEC's documents, he has no standing based on privilege to object to CMEEC's disclosure of the documents to the Government or others.

Lastly, in response to the amended motion of CMEEC and Bilda for entry of a Rule 502(d) protective order, Pryor argues that CMEEC's disclosure of corporate-privileged documents to the Government would operate as a waiver of the privilege even if disclosed in accordance with the proposed Rule 502(d) order. But again Pryor has no standing to raise privilege objections to CMEEC's disclosure of documents to third parties, especially documents here involving communications between Bilda and CMEEC counsel to which Pryor does not even claim he was a party. Even if he had standing, the Government has amply established that CMEEC has not engaged in any kind of improper selective disclosures to warrant a conclusion that a Rule 502(d) order should not enter. *See* Doc. #249 at 11-16.

## CONCLUSION

The Court GRANTS the Government's motion to compel (Doc. #211), and the Court GRANTS the amended motion of John Bilda and CMEEC for entry of a stipulated protective order pursuant to Fed. R. Evid. 502(d) (Doc. #243).

It is so ordered.

Dated at New Haven this 5th day of June 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge