UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　v.<br><br>DREW RANKIN, JAMES SULLIVAN,<br>JOHN BILDA, EDWARD DEMUZZIO,<br>AND EDWARD PRYOR,<br>　　　*Defendants*. | No. 3:18-cr-272 (JAM) |

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION OF QUINTEVENTS, LLC TO QUASH OR MODIFY SUBPOENA**

This is a federal criminal case in which one of the defendants has subpoenaed a third party for documents that the defendant believes are relevant to his defense at trial. The third party has moved to quash or modify the subpoena. I will grant in part and deny in part the motion to quash or modify the subpoena.

### BACKGROUND

The Government has charged the defendants with conspiring to misappropriate and criminally misappropriating funds in violation of 18 U.S.C. §§ 371 and 666(a)(1)(A). *See generally United States v. Rankin*, 422 F. Supp. 3d 564, 573–577 (D. Conn. 2019) (summarizing allegations of indictment).

The defendants were all officers or directors of the Connecticut Municipal Electric Energy Cooperative ("CMEEC"). According to the Government, the defendants misappropriated the funds of CMEEC and its members when they used these funds for personal purposes to pay for trips to the Kentucky Derby and a West Virginia golf resort from 2014 to 2016. By contrast, the defendants maintain that these trips were lawful corporate retreats.

In order to support this "corporate retreat" defense, one of the defendants—Drew Rankin—applied *ex parte* to the Court for and was granted leave to serve a trial subpoena on a

1

company named QuintEvents, LLC ("Quint"). This company describes itself as "a premiere sports and experiences provider that provides tickets, travel, and accommodation services to many high-profile sporting and cultural events around the world, including the Kentucky Derby, the Super Bowl, and the NFL Hall of Fame induction ceremonies, among others."[1] It appears that the evidence at trial will show that Rankin used Quint in order to book the Kentucky Derby trips at issue in this case.[2]

> The subpoena seeks the following records from Quint:
>
> Documents sufficient to identify (A) all Entities that went to the following events from January 1, 2014 through December 31, 2017: (1) Kentucky Derby, (2) College Football Playoff National Championship; (3) Super Bowl; (4) NBA All-Star; (5) The Players Championship; (6) Belmont Stakes; (7) Breeders' Cup World Championships; and (8) the President's Cup; and (B) the state from which the group came.
>
> If it is less burdensome, you may produce documents sufficient to identify only those entities that purchased tickets for ten or more individuals.
>
> "Entities" means companies, governmental and quasi-governmental entities, public and quasi-public agencies, public and quasi-public utilities, schools, and universities.[3]

Quint has moved to quash or modify the subpoena.[4]  In response, Rankin has modified the subpoena request to seek records relating only to the Kentucky Derby for certain years as follows:

> Documents sufficient to identify all purchasers of tickets or packages for ten or more individuals to either (1) the 2014, 2015, and 2016 Kentucky Derbies or (2) the 2014 and 2015 Kentucky Derbies and any one of the Kentucky Derbies in 2018, 2019, or 2021.[5]

---

[1] Doc. #357-1 at 1.
[2] *See, e.g.*, Doc. #366-1 at 2-3 (purchase agreement for 2013 Kentucky Derby tickets in the name of Drew Rankin and CMEEC).
[3] Doc. #371-1 at 2.
[4] Doc. #357.
[5] Doc. #366 at 14. To the extent that Rankin's modified request seeks information about "all purchasers" rather than only "entity" purchasers and seeks records after 2017, the modified request is broader than the subpoena itself.

## DISCUSSION

Rule 17 of the Federal Rules of Criminal Procedure allows for criminal defendants to apply for and serve a trial subpoena for documents or other evidence in support of their defense. "[I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general fishing expedition." *United States v. Nixon*, 418 U.S. 683, 699-700 (1974).[6]

Even if a court has granted a defendant leave to serve a subpoena, the recipient of the subpoena may seek relief from responding to the subpoena. "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim P. 17(c)(2).

As an initial matter, there is no dispute that the documents sought here would be admissible at trial as business records. *See* Fed. R. Evid. 803(6), 902(11). Nor is there any dispute that the records sought here are not otherwise publicly available or readily accessible from any other source.

Quint argues that the documents sought are not relevant. I do not agree. A key issue at trial will be whether the Kentucky Derby trips were for reasons related to any valid corporate retreat purpose or instead for personal benefit. Evidence that other companies or entities have

---

[6] Unless otherwise noted, this ruling omits all internal quotations, citations, brackets, and other alterations in its quotations and citations of case decisions.

made bulk purchases of ten or more ticket packages is relevant to the jury's consideration whether there was a valid corporate purpose for such expenditures.[7]

To be sure, as Quint points out, the documents will not show *why* other entity purchasers bought tickets or that they were necessarily for purposes of corporate retreats. But the test for relevancy is merely whether evidence has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Evidence need not be dispositive or conclusive about a fact issue for it to meet the test of relevance. *See United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010).

Quint argues that compliance with the subpoena would be oppressive and burdensome. It maintains that it has about 5,000 client files and that for the years in question from 2014 to 2016 that are pertinent to the indictment they are not searchable without a manual review of PDF images stored in individual electronic folders.[8] "To obtain any specific information about the customer (e.g., the name of the purchasing individual or entity) or the contract (e.g., the specific event(s) attended or the number of tickets purchased) each individual contract would need to be reviewed and analyzed."[9] Quint further states that "[b]eginning in 2017, Quint began the process of tracking its sales and associated documents in Salesforce, a software application that creates a database that includes all pertinent information about each client and each transaction."[10]

I agree with Quint that it would be unduly burdensome to require compliance with the subpoena even as modified by Rankin. Therefore, I will further modify the subpoena to require

---

[7] Although Rankin also argues that evidence of purchases from Quint by other corporate entities is relevant to his state of mind, he does not proffer that he was aware of any purchases made by other corporate entities from Quint. He has not shown that the records at issue are relevant to any defense based on what he knew during the years in question.
[8] Doc. #357-2 at 2-3.
[9] *Id.* at 3.
[10] *Ibid.*

4

Quint to produce responsive records for two years from 2014 and 2015. If indeed it is a common practice for companies or other entities to buy ticket packages for the Kentucky Derby, then two years' worth of records is sufficient to make this point without imposing on Quint an additional burden. Quint may satisfy its obligation by producing a copy of any purchase agreements for the Kentucky Derby for the years at issue to the extent that any purchase agreement reflects that the purchaser may be any "entity" as that term is defined in the subpoena and that purchased ten or more tickets or packages for individuals.

Although Quint has proposed to redact or anonymize the names of its customers, I conclude that the names are of potential significance and may not be redacted from the production but shall be treated as confidential by the parties and not publicly disclosed without leave of the Court. In the event that Rankin or any other party seeks to admit the records at trial and to disclose the true names of any customers, they shall file a motion stating what documents they propose to admit and the reasons why the admission of customer names is important to the defense. The Court's order requiring compliance in part with the subpoena does not waive the right of the Government to object to the admission of any documents as evidence at trial.

Lastly, I have considered the possibility of requiring Quint to produce data from 2018 and later in light of its representation that this data is more readily accessible and presumably searchable through its Salesforce software program. But these are for years that are later than the years covered by the indictment and that are not even within the date range of the original subpoena. Even Rankin's modified subpoena request does not seek these later-year records on a stand-alone basis but only in addition to seeking production of records from 2014 and 2015. Accordingly, although it might be easiest for Quint simply to produce records from 2018 and

later, these later years are of diminished relevance and have not been independently sought. I decline to add to Quint's burden by requiring it to produce records from 2018 and later.

## CONCLUSION

The Court GRANTS in part and DENIES in part the motion of QuintEvents, LLC to quash or modify the subpoena. QuintEvents, LLC shall produce by **November 10, 2021** documents (such as purchase agreements) that are sufficient to identify the names of any entities (as defined in the subpoena) that made purchases of tickets or packages for ten or more individuals to the Kentucky Derby for 2014 and 2015. Rankin shall promptly pay all search and production costs incurred by QuintEvents, LLC.

It is so ordered.

Dated at New Haven this 30th day of October 2021.

                                                        /s/ *Jeffrey Alker Meyer*
                                                       Jeffrey Alker Meyer
                                                       United States District Judge