UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DREW RANKIN,<br>    *Defendant.* | No. 3:18-cr-272 (JAM) |

**NOTICE OF SPECIFIC TESTIMONY THAT THE COURT INTENDS TO CONSIDER FOR PURPOSES OF EVALUATING WHETHER TO APPLY AN OBSTRUCTION-OF-JUSTICE ADJUSTMENT FOR DEFENDANT DREW RANKIN**

The United States Sentencing Guidelines provide for an increase of two offense levels if "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." U.S.S.G. § 3C1.1.

If an obstruction-of-justice adjustment is proposed to be based on a defendant's allegedly false testimony at trial, a district court "'must apply the federal criminal perjury statute, 18 U.S.C. § 1621,'" and it "must find by a preponderance of the evidence that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter." *United States v. Lewis*, 62 F.4th 733, 747 (2d Cir. 2023) (quoting *United States v. Thompson*, 808 F.3d 190, 194–95 (2d Cir. 2015) (*per curiam*)). The Court may not apply an obstruction-of-justice adjustment unless it concludes that the defendant "[gave] false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Thompson*, 808 F.3d at 196 (internal quotations omitted).

1

The Court intends to consider whether an obstruction-of-justice adjustment should apply to the defendant Drew Rankin on the basis of certain aspects of his testimony about the August 2015 trip to the Greenbrier. Although the presentence report evaluates and declines to recommend an obstruction-of-justice enhancement, the presentence report does not address aspects of Mr. Rankin's testimony about the August 2015 trip to the Greenbrier.[1]

For its part, the government has filed a sentencing memorandum recommending that the Court apply an obstruction-of-justice adjustment.[2] The government briefly references certain testimony of Mr. Rankin concerning the August 2015 trip to the Greenbrier.[3] But much of the government's argument focuses on other aspects of Mr. Rankin's testimony.

When the Court ruled on the defendants' post-trial motions, it raised concerns about the credibility of Mr. Rankin's testimony concerning the August 2015 trip to the Greenbrier.[4] The Court now issues this notice to identify specific questions and answers with respect to Mr. Rankin's testimony concerning the August 2015 trip to the Greenbrier that the Court intends to consider—in addition to those grounds raised by the government—for purposes of determining whether Mr. Rankin's testimony amounted to perjury and to allow for an obstruction-of-justice adjustment. *See United States v. Sisti*, 91 F.3d 305, 310 (2d Cir. 1996) (discussing court's duty to ensure prior notice to a defendant of basis for potential guidelines adjustments including notification "by the court sua sponte").

In particular, the Court intends to consider whether the answers that are highlighted in boldface below amounted to perjury warranting an adjustment for obstruction of justice:

---

[1] Doc. #614 at 18–19 (¶¶ 56–61).
[2] Doc. #634 at 8–12.
[3] *Id.* at 8 & n.5.
[4] Doc. #600 at 13–14, 31.

1. Testimony of Drew Rankin on direct examination concerning origins of August 2015 trip to the Greenbrier:

   > Q. Let's shift gears to The Greenbrier planning trip in August of 2015. Do you recall going to The Greenbrier with Mr. DeMuzzio, Mr. Bilda, and Mr. Jim Sullivan in August of 2015?
   >
   > A. I do.
   >
   > **Q. How did that come about?**
   >
   > **A. It came about originally in a meeting I had with the compensation committee that we were together to discuss CMEEC performance and my performance.**[5]

2. Testimony of Drew Rankin on direct examination concerning whether he intended to conceal a personal golf trip:

   > Q. Let's go to Government Exhibit 330, please.
   >
   > This is an email that you sent to Mr. DeMuzzio, Mr. Bilda, and Mr. Sullivan -- James Sullivan -- in July of 2015, right?
   >
   > A. Correct.
   >
   > Q. Let's go to that first paragraph. Why don't you read that to the jury.
   >
   > A. "The plan is to have a board strategic retreat in October at The Greenbrier in West Virginia. Prior to such, I thought it would be beneficial for the four of us to visit the place in August to check it out and to craft the agenda. I have ideas what I would like to cover and we can use that time to finalize.
   >
   > "As a quick summary, I plan to lay out and share with you our ten-year strategic plan and an enhanced operating system we have been working on within the company."
   >
   > **Q. When you typed that, Mr. Rankin, was that true?**
   >
   > **A. Yes.**

---

[5] Doc. #513 at 177 (Tr. 3090).

> **Q. Were you trying to conceal a personal golf trip by typing that?**
>
> **A. No.**[6]

3. Testimony of Drew Rankin on direct examination concerning reason for billing August 2015 trip to the Greenbrier to the compensation committee:

   > Q. So how was this trip, the August 2015 Greenbrier trip, accounted for within CMEEC's finances?
   >
   > A. In A&G.
   >
   > Q. Was it booked to a particular committee?
   >
   > A. Comp committee -- compensation committee.
   >
   > **Q. Why was it booked to the comp committee?**
   >
   > **A. Because the idea originated inside the comp committee when we were meeting.** And it was performance of the company related and performance of me related in terms of the vision mission objective.[7]

4. Testimony of Drew Rankin on direct examination concerning length of time that he discussed CMEEC's ten-year strategic plan and the entrepreneurial operating system during the August 2015 trip to the Greenbrier:

   > **Q. About how many hours do you think on that four-day trip did you discuss the ten-year strategic plan and the entrepreneurial operating system?**
   >
   > **A. In total? I would say probably 35 to 40 hours each because we were all four together that long in face time.**[8]

---

[6] *Id.* at 179 (Tr. 3092).
[7] *Id.* at 181–82 (Tr. 3094–95).
[8] *Id.* at 188 (Tr. 3101).

5. Testimony of Drew Rankin on re-direct examination concerning billing of August 2015 trip to the Greenbrier to the compensation committee:

> Q. So explain to the jury how the compensation committee expense relates to A&G and what that means.
>
> A. So the A&G is just, in total, just broken down to a bunch of subaccounts that we use to track internally. And based on me listing that as comp committee, **because that's where the idea was originated**, any expense that -- associated with that would ultimately hit accounts associated with the compensation committee.[9]

6. Testimony of Drew Rankin on re-direct examination concerning purpose of August 2015 trip to the Greenbrier:

> Q. Did that trip, that August 2015 Greenbrier trip, relate to CMEEC business?
>
> **A. It did.**
>
> **Q. How?**
>
> **A. It was -- it was getting insight from three -- two members of the board as well as the chairman of the board in how to roll out the EOS, explain EOS, get alignment with all of our stakeholders, balance of the board of directors, and ultimately make a decision if they wanted to apply this model or not because, as I said, it did have big hairy goals that are -- would require additional efforts and commitment and trust by the board.**
>
> **Q. Was that trip purely personal?**
>
> **A. No.**[10]

---

[9] Doc. #515 at 49 (Tr. 3483).
[10] *Id.* at 50–51 (Tr. 3484–85).

5

7. Testimony of Drew Rankin on re-cross examination concerning length of time that he discussed CMEEC's ten-year strategic plan and the entrepreneurial operating system during the August 2015 trip to the Greenbrier:

> Q. There's nothing on your schedule about discussing the PowerPoint presentation, correct?
>
> A. That's correct.
>
> Q. Did you tuck that PowerPoint presentation into one of your golf bags and discuss it as you walked on the fairways?
>
> A. No. **We discussed it on the plane. We discussed it on the night we arrived. We discussed it at dinner. We discussed it as we were playing. We discussed it on the way back. It was about 40 hours of focused time.**[11]

In light of this notice, the parties may file supplemental submissions on or before **May 1, 2023** with respect to the grounds or lack of grounds for application of the obstruction adjustment.

It is so ordered.

Dated at New Haven this 14th day of April 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[11] *Id.* at 71–72 (Tr. 3505–06).