UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DREW RANKIN, JAMES SULLIVAN, and JOHN BILDA,<br>    *Defendants*. | No. 3:18-cr-272 (JAM) |

ORDER RE RESTITUTION

A federal jury convicted three defendants—Drew Rankin, James Sullivan, and John Bilda—for the intentional misappropriation of property from the Connecticut Municipal Electric Energy Cooperative ("CMEEC"). Following sentencing of each of the defendants, the Court now issues this ruling to resolve disputed issues of restitution.

For the reasons set forth below, the Court concludes that CMEEC is entitled to restitution in the total amount of $748,800.63 and that payment of this amount should be apportioned among the defendants so that Rankin shall be liable to pay restitution of $374,400.31 and that Sullivan and Bilda shall each be liable to pay restitution of $187,200.16.

BACKGROUND

A federal statute—18 U.S.C. § 666(a)(1)(A)—makes it unlawful for a person to intentionally misappropriate more than $5,000 in any calendar year from a local government agency if the local government agency receives more than $10,000 in federal benefits during the same year. A federal grand jury charged five defendants—Drew Rankin, James Sullivan, John Bilda, Edward DeMuzzio, and Edward Pryor—with conspiring to violate this law (Count One) and with substantive violations of this law in each of the calendar years of 2014, 2015, and 2016 (Counts Two, Three, and Four).

1

The charges were based on allegations that the defendants used CMEEC funds to finance several trips for their personal benefit to the Kentucky Derby and a luxury resort known as The Greenbrier in West Virginia. *See United States v. Rankin*, 651 F. Supp. 3d 523, 531–40 (D. Conn. 2023) (summarizing the trial evidence).

A trial jury returned guilty verdicts against just three of the defendants—Rankin, Sullivan, and Bilda—and on only one count of the indictment (Count Three). *Id.* at 540. The jury otherwise acquitted all five defendants of the conspiracy charge (Count One), acquitted all five defendants of intentional misappropriation of CMEEC property in 2014 (Count Two), and acquitted two of the defendants—DeMuzzio and Pryor—of intentional misappropriation of CMEEC property in 2015 (Count Three). *Ibid.* The jury never passed on whether the defendants intentionally misappropriated property in 2016 (Count Four) because the Court dismissed this count on motion of the government before the case was submitted to the jury. *Ibid.*[1]

Following the jury verdicts, I sentenced Rankin, Sullivan, and Bilda to terms of imprisonment that have been stayed pending appeal. As the parties requested, I deferred entry of a restitution order pending further submissions from the parties and oral argument. This ruling now follows.

## DISCUSSION

The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, governs the entry of an order of restitution in this case. The MVRA provides that a district court "shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). The Second Circuit has instructed that "[i]n ordering restitution under the MVRA,

---

[1] More precisely, the Court dismissed Count Four as to Sullivan at the outset of trial and dismissed Count Four as to the remaining defendants at the close of trial evidence. *See* Docs. #168, #463.

2

a court must consider two distinct questions: (1) does the MVRA apply in the case at hand; and, if so, (2) what is compensable as restitution?" *United States v. Avenatti*, 81 F.4th 171, 207 (2d Cir. 2023).[2]

Starting with the first question (whether the MVRA applies to this case), there is no dispute that a conviction under 18 U.S.C. § 666(a)(1)(A) is a type of property offense that is subject to the MVRA. *See United States v. Razzouk*, 984 F.3d 181, 186–88 (2d Cir. 2020). Nevertheless, the MVRA requires that any beneficiary of a restitution order be a "victim"—that is, "a person directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(2). A person does not qualify as a "victim" unless the defendant's conduct was not only a cause-in-fact of the harm but also a proximate cause of the harm (*i.e.*, that it was reasonably foreseeable to the defendant). *See United States v. Goodrich*, 12 F.4th 219, 229 (2d Cir. 2021).

Moreover, a victim is entitled to restitution only for harm directly and proximately caused by the conduct for which the defendant was convicted. "[R]estitution may be imposed only for losses arising from the specific conduct that is the basis of the offense of conviction." *Id.* at 228. Therefore, a court may not base an award of restitution on harm suffered by a victim that is attributable (if at all) to conduct for which a defendant was not charged, was acquitted, or was otherwise not convicted.[3]

---

[2] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

[3] The restitution statute further provides that a victim includes "in the case of an offense that involves *as an element* a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." § 3663A(a)(2) (emphasis added). The Second Circuit has construed this language to allow a restitution order against a defendant who has been convicted for a conspiracy even if the defendant was acquitted on parallel substantive offenses involving the same victims. *See United States v. Boyd*, 222 F.3d 47, 50–51 (2d Cir. 2000). But here the jury acquitted the defendants of the conspiracy charge (Count One), and the defendants' conviction for intentional misappropriation (Count Three) did not require the jury to find as an element of the offense that the defendants engaged in a scheme, conspiracy, or pattern of criminal activity. Therefore, I have no occasion to consider whether the defendants may be liable in restitution for harm caused by

3

Turning to the second question (what is compensable as restitution), the MVRA instructs that for property crimes a defendant must return the property or reimburse the victim for the value of the property that was wrongfully taken or damaged. *See* 18 U.S.C. § 3663A(b)(1).[4] In addition, as relevant here, the MVRA further requires the defendant to "reimburse the victim for . . . necessary . . . other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." *Id.* § 3663A(b)(4).[5]

The government bears the burden of proving by a preponderance of the evidence the amount of the loss sustained by the victim. *See* 18 U.S.C. § 3664(e). And when calculating an award of restitution, a court does not have to determine the restitution amount with scientific precision. "[T]he MVRA requires only a reasonable approximation of losses supported by a sound methodology." *Razzouk*, 984 F.3d at 185.

The government and CMEEC seek restitution for several different categories of expenses incurred by CMEEC. I will address each category in turn.

*Trip expenses*

It is undisputed that CMEEC's total trip expenses incurred in 2015 were in the amount of $502,242.18.[6] This figure consists of expenses incurred by CMEEC for four different trips: (1) expenses paid by CMEEC in 2015 for the 2015 trip to the Kentucky Derby ($83,317.61); (2) pre-

---

conduct for which they were not convicted.

[4] Section 3663A(b)(1) provides in full as follows: "(b) The order of restitution shall require that such defendant-- (1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense-- (A) return the property to the owner of the property or someone designated by the owner; or (B) if return of the property under subparagraph (A) is impossible, impracticable, or inadequate, pay an amount equal to-- (i) the greater of-- (I) the value of the property on the date of the damage, loss, or destruction; or (II) the value of the property on the date of sentencing, less (ii) the value (as of the date the property is returned) of any part of the property that is returned."

[5] Section 3663A(b)(4) provides in full as follows: "(b) The order of restitution shall require that such defendant-- . . . (4) in any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense."

[6] Doc. #704 at 52.

4

paid expenses of CMEEC made in 2015 for the 2016 trip to the Kentucky Derby ($288,460); (3) expenses paid by CMEEC for a small group trip of Rankin, Sullivan, Bilda, and DeMuzzio to The Greenbrier in August 2015 ($21,447.39); and (4) expenses paid by CMEEC for a large group trip to The Greenbrier in October 2015 ($109,017.18).[7]

The government seeks restitution as a "loss of property" under 18 U.S.C. § 3663A(b)(1) for trip expenses incurred by CMEEC in the amount of $502,242.18 from Rankin, $104,765 from Sullivan, and $213,782.18 from Bilda.[8] The amounts sought by the government track the amounts that I individually calculated at sentencing for each defendant as their respective sentencing "loss" for purposes of the United States Sentencing Guidelines. *See* U.S.S.G. §§ 2B1.1(b), 1B1.3(a)(1)(A)–(B). For each defendant I individually assessed the evidence to calculate the trip expenses that they personally and proximately caused as part of their jointly undertaken activity to misappropriate CMEEC funds in 2015.[9]

I found Rankin responsible for $502,242.18 because he personally planned and caused CMEEC to pay for all four of the trips that CMEEC paid for in 2015.[10] I found lower amounts for Sullivan and Bilda, because there was no evidence that they authorized or caused Rankin to make the pre-payment in 2015 of $288,460 for the 2016 Kentucky Derby trip.[11] In addition, I found that Sullivan's loss amount should be lower than Bilda's because he had left the company in late August 2015 and did not join the October 2015 trip to The Greenbrier.[12]

The defendants' arguments for lower restitution amounts are recycled versions of arguments that they have raised in prior motions or at sentencing. For example, the defendants

---

[7] *Id.* at 76.
[8] Doc. #702 at 3–4.
[9] Doc. #704 at 74–87 (Rankin); Doc. #705 at 69–74 (Sullivan); Doc. #706 at 39–47 (Bilda).
[10] Doc. #704 at 78–82.
[11] Doc. #705 at 73–74; Doc. #706 at 45–46.
[12] Doc. #705 at 34–37.

argue that certain trip expenses cannot be attributed to them because CMEEC's board of directors budgeted and approved these expenses. But as the Second Circuit has observed, "[i]f all the officers and directors become a party to a scheme to use corporate assets improperly, the resulting injury to the entity and its owners—the shareholders—is no less than when only some of the officers are involved. Officers and directors do not have a license to plunder corporate treasuries acting individually or collectively." *United States v. Wallach*, 935 F.2d 445, 468–69 (2d Cir. 1991), *abrogated on other grounds by Ciminelli v. United States*, 598 U.S. 306 (2023). So even if the defendants acted with board approval, this did not immunize or license them to intentionally misappropriate corporate funds for personal purposes.[13]

Nor am I convinced that any approval of trip expenses by other CMEEC board members would have broken the necessary causal chain for each of the defendants themselves to be responsible for directly and proximately causing CMEEC to incur the trip expenses in the amounts I allocated to them at sentencing. Rankin himself initiated and planned each of the trips. Sullivan and Bilda were part of Rankin's inner circle of board member confidantes and joined each of the trips for which trip expenses were allocated to them in 2015. This is enough to conclude that the defendants caused the trip expenses for which they were found liable at sentencing. *See United States v. Marino*, 654 F.3d 310, 319 (2d Cir. 2011) (declining to adopt "a rigid 'direct' causation standard that would foreclose restitution where even the slightest intervening event severs factually or temporally the link between defendant's crime and victim's loss").

---

[13] Because board approval would not have immunized the defendants from liability, it is unnecessary to call additional board members as witnesses as the defendants propose. Doc. #707 at 7–8; Doc. #719. Such testimony could have been offered at trial and/or sentencing, and it appears that the defendants seek to expand the record to re-litigate issues already decided by the jury and me at sentencing.

The defendants further argue that they should each pay only their own trip expenses rather than the trip expenses of others. But this argument conflates the defendants' personal gain with the victim's loss, and "a sentencing court ordering restitution under the MVRA may not substitute a defendant's ill-gotten gains for the victim's actual loss." *United States v. Zangari*, 677 F.3d 86, 93 (2d Cir. 2012). Moreover, as I concluded at sentencing, each of the defendants is responsible for those trip expenses of others that were caused and foreseeably known to them as a part of their jointly undertaken effort to divert CMEEC funds during 2015 for improper personal use.

I recognize that "[t]hough restitution and loss involve closely related calculations, which ultimately produce the same figure in many cases, the inquiries are not identical." *United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 102 (2d Cir. 2014). For example, the metrics may diverge because the Sentencing Guidelines recognize not just actual loss, but also intended loss. *See United States v. Gushlak*, 728 F.3d 184, 195 (2d Cir. 2013). But this is an actual loss case, and "the quantity and quality of evidence the district court may rely upon to determine the amount of loss is the same in both the Guidelines and restitution contexts." *Id.* at 196. And here the loss calculations under the MVRA and the Sentencing Guidelines align because they are based on the same preponderance, causation, and foreseeability standards for the calculation of actual loss that is properly attributable to each defendant.

In short, I see no grounds to reach a different conclusion for restitution purposes than I did for Sentencing Guidelines purposes. Therefore, I will adopt for purposes of restitution the loss amounts that I calculated at sentencing: $502,242.18 as to Rankin, $104,765 as to Sullivan, and $213,782.18 as to Bilda. I note, however, that these expense figures duplicate one another

(involving the same expenses for the same trips), and the amounts that the defendants must pay will be subject to apportionment as I discuss later in this ruling.

### *Counsel fees for representation of CMEEC and non-defendant CMEEC employees*

The government and CMEEC seek restitution of $311,044.15 for outside counsel and related fees incurred by CMEEC to represent itself during the lengthy investigation and prosecution of this case.[14] They also seek $127,532.75 for fees paid by CMEEC to represent current and former CMEEC employees and board members who the government requested to interview and/or who testified in this case.[15] Thus, the government and CMEEC seek a total of $438,576.90 for outside counsel fees.

As noted above, the MVRA allows an award of restitution for "necessary . . . other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." *Id.* § 3663A(b)(4). And the Second Circuit has made clear that such "necessary other expenses" may include a victim's attorneys' fees, "but only if incurred during participation in a government investigation or prosecution of the offense or attendance at criminal proceedings related to the offense." *Avenatti*, 81 F.4th at 208. Therefore, "a victim may recover attorneys' fees it was required to incur to advance the investigation or prosecution of the offense." *United States v. Afriyie*, 27 F.4th 161, 173 (2d Cir. 2022). In *Afriye*, for example, the Second Circuit affirmed an order of restitution for a victim company's attorneys' fees incurred responding to subpoenas and requests from federal criminal

---

[14] I derive this figure from CMEEC's revised request for counsel fees as calculated in the Second Supplemental Affidavit of Joseph W. Martini. *See* Doc. #729-1 at 2 (¶ 4) (calculating total outside counsel fees/costs of $365,584 for the representation of CMEEC, minus $54,540 for counsel's work on the restitution-related proceedings which is separately addressed later in this ruling).
[15] Doc. #702 at 6; Doc. #702-2 at 2; Doc. #716 at 4.

prosecutors, preparing company employees to testify at the criminal trial, and participating in post-verdict restitution proceedings. *Id.* at 173–74.

The government and CMEEC have satisfactorily established that the outside counsel fees they seek are within the scope of what is allowed as "necessary other expenses" under § 3663A(b)(4). The fees and related costs were for CMEEC's response to grand jury and trial subpoenas, attending meetings requested by the government, responding to government requests for documents and information, preparing witnesses for testimony at trial, and attending trial on dates when CMEEC witnesses were expected to testify or as necessary to address privilege issues and requests from the government.[16] In addition, CMEEC paid outside counsel fees for lawyers to represent current and former CMEEC employees and board members who the government requested to interview or subpoenaed to testify before the grand jury or at trial.[17] Restitution is not sought for additional outside counsel expenses, such as for internal investigations by outside counsel, public relations activities, or the costs of re-doing document productions.[18]

I see no difference between costs expended by CMEEC to represent itself and costs expended by CMEEC to represent its non-defendant employees or board members who were interviewed and/or testified during the investigation and prosecution of the case. *See Afriyie*, 27 F.4th at 173 (affirming restitution award to company for attorney fees incurred to prepare company employees to testify at trial); *see also United States v. Hatfield*, 2015 WL 13385926, at *13 (E.D.N.Y. 2015) (allowing restitution for victim company's advance of legal expenses to company directors because "the legal work paid for was necessary for the Company's

---

[16] Doc. #702 at 5; Doc. #713 at 7–14 (detailed recitation).
[17] Doc. #702 at 6.
[18] *Id.* at 5.

participation and cooperation in the Government's investigation of Defendants and DHB"). Both types of costs—for CMEEC's own legal representation as well as for the legal representation of CMEEC employees and directors—served to protect CMEEC's interests and to reasonably respond to the demands of the government's investigation and prosecution.

The defendants dispute specific line items on the attorney billing records.[19] But CMEEC has since responded to the defendants' particular concerns and, in part, revised its fee estimates accordingly.[20] I have considered the billing records and each of the line-item objections and am persuaded that the revised amounts requested by CMEEC are supported and were reasonably necessary expenses of the type allowed under § 3663A(b)(4).

More significantly, however, the defendants point out—as noted above—that restitution may be ordered only for harm caused by their specific offense of conviction (Count Three) and not for harm caused by conduct for which they were not convicted (Counts One, Two, and Four), much less for harm caused by conduct for which their co-defendants DeMuzzio and Pryor were acquitted or not convicted. According to the defendants, what this means is that they may not be held liable to pay for *any* of CMEEC's outside counsel fees because the government has made no effort to attribute any particular outside counsel expenses specifically to the counts of conviction as distinct from the counts for which the jury returned acquittals or that were dismissed prior to submission of the case to the jury.[21] By contrast, the government argues that "the investigation and prosecution would have looked identical, and CMEEC would have incurred the same category of expenses, even if Count Three had been the only count charged."[22]

---

[19] *See* Doc. #725 at 3–7 (filed under seal).
[20] *See* Doc. #729 at 3–8.
[21] Doc. #707 at 12–13; Doc. #721 at 26–29.
[22] Doc. #716 at 7; *see* Doc. #721 at 20. In addition, CMEEC argues without citing any authority that the "other expenses" provision of the restitution statute is not subject at all to the requirement that a victim may only recover expenses for harm directly and proximately caused by conduct within the scope of a defendant's conviction. Doc. #713 at 6. If that were so, then presumably CMEEC could demand restitution from the defendants even if they had

I do not agree with either the defendants or the government. The defendants' position ignores that at least some portion of CMEEC's counsel fees must have been expended to support the convictions of each of the defendants, while the government's position assumes too much by positing that all the same expenses would have been incurred even if the charges and evidence in this case had been restricted to just the single count of conviction.

As noted above, a court's task when calculating restitution is to reasonably estimate the costs to the victim from the offense of conviction. Therefore, in view that the defendants were not convicted on all counts, I conclude that it is appropriate to apply a percentage discount to the restitution award for CMEEC's outside counsel fees to reasonably ensure that the award is based only on harm to CMEEC caused by conduct for which the defendants were convicted.

But how much to discount? The three defendants Rankin, Sullivan, and Bilda were convicted on only one of the four counts charged against them, and the remaining defendants DeMuzzio and Pryor were not convicted on any charges. If I considered only the percentage of charges that resulted in conviction, this would weigh in favor of a drastic discount of as much as 85% for the reimbursement of outside counsel fees (*i.e.*, to reflect that there were convictions on only 3 of the 20 charges filed against the 5 defendants in this case).

On the other hand, there was much overlap in the evidence presented to support both the charges of conviction under Count Three and the remaining charges which were either rejected by the jury or dismissed. For example, the evidence in support of the acquitted conspiracy charge of Count One as to activities occurring in 2015 would have been equally admissible for the substantive charge of misappropriation in Count Three. And I have previously ruled that "the large majority of the evidence" that was introduced in support of the dismissed Count Four "was

---

been entirely acquitted of all the charges against them.

properly admissible in the first instance as to Count Three." See *Rankin*, 651 F. Supp. 3d at 556. So this suggests that a large amount of the evidence produced by means of efforts involving CMEEC's outside counsel was properly admissible for the government to prove its case against Rankin, Sullivan, and Bilda as to Count Three even if it was also admissible for other counts that were dismissed or acquitted.

In light of all the facts and circumstances, I am convinced that a 50% discount is most appropriate to reasonably ensure that the defendants are held liable only for CMEEC's outside counsel fees that were necessarily incurred in furtherance of the defendants' convictions under Count Three. Therefore, I will award $219,288.45 (50% of $438,576.90) in restitution for CMEEC's outside counsel expenses.

### *Attorney fees incurred by CMEEC for representation of the defendants*

The government seeks an order of approximately $9.5 million in restitution for the enormous amounts expended by CMEEC to pay for the criminal defense of all five defendants.[23] But, as the Second Circuit has made clear, a victim's payments for attorney fees are not compensable as "other expenses" under § 3663A(b)(4) unless done in *response* to government requests for assistance with respect to a criminal investigation and prosecution and in order to *advance* the investigation and prosecution of the offense of conviction. See *Afriye*, 27 F.4th at 169, 173; *see also United States v. Avenatti*, 2022 WL 452385, at *8 (S.D.N.Y. 2022) (noting "that restitution under the MVRA is available for attorneys' fees incurred in connection with services that were invited, required, requested, or otherwise induced by the Government"), *aff'd* 81 F.4th 171 (2d Cir. 2023).

---

[23] Doc. #702 at 8 (detailing defense costs for each charged defendant).

There is no evidence that the government requested CMEEC to pay the defendants' legal defense fees. Nor is there evidence that CMEEC's payment of the defense fees was necessary for CMEEC to respond to the government's subpoenas or requests for assistance. Similarly, there is no evidence that CMEEC's payments of the defense fees otherwise advanced—rather than impeded—the government's investigation and prosecution of this case. *See Hatfield*, 2015 WL 13385926, at *12 (rejecting argument that legal fees paid by the victim company to the defendants pursuant to an indemnification agreement constituted "other expenses" within the scope of § 3663A(b)(4) because "the legal fees advanced to Defendants were used to defend against, not advance, the Government's prosecution of the Offenses of Conviction").

It appears instead that CMEEC decided on its own initiative to pay the defendants' legal fees in accordance with its bylaws and that its obligation to do so and insurance coverage has been the subject of prior and ongoing civil litigation.[24] Whether—as the government claims—the defendants in turn agreed under certain circumstance to re-pay CMEEC for the advancement of their legal fees does not mean that the MVRA applies to this type of expense. It means at best that CMEEC may pursue any civil remedies for breach of contract against the defendants rather than forcing the defendants to pay their own legal fees by means of an award of criminal restitution.

The government and CMEEC suggest in the alternative that the fees paid for defense fees may qualify as a "loss of property" subject to restitution under § 3663A(b)(1) of the MVRA.[25] This provision requires restitution "in the case of an offense resulting in damage to or loss or

---

[24] *Id.* at 8–12; *see also Rankin v. Conn. Mun. Electric Energy Coop.*, 3:23-cv-805 (D. Conn. 2023); *Pryor v. Conn. Mun. Electric Energy Coop.*, 3:19-cv-87 (D. Conn. 2019); *Conn. Mun. Electric Energy Coop. v. Nat'l Union Fire Ins. Co.*, 3:19-cv-839 (D. Conn. 2019).
[25] Doc. #702 at 6 ("CMEEC seeks restitution, as a loss of property, for the legal fees that CMEEC advanced for all defendants named in the Indictment"); Doc. #702-2 at 2 (same); Doc. #729 at 7–8 (citing *Hatfield*, 2015 WL 13385926, at *12).

13

destruction of property of a victim of the offense," and it requires the defendant either to "return the property to the owner of the property" or "pay an amount equal to . . . the value of the property." § 3663A(b)(1). This wording makes clear that the loss of property that may be subject to restitution is limited to the property that was lost because of the offense itself. And consistent with the principle that a court may not order restitution for alleged misconduct or loss that is outside the scope of the offense of conviction, "the loss caused *by the conduct underlying the offense of conviction* establishes the outer limits of a restitution order." *United States v. Battista*, 575 F.3d 226, 231 (2d Cir. 2009) (emphasis added).

Here, the defendants were neither charged nor convicted for fraudulently inducing CMEEC to pay their legal defense fees. If they had been, then the defendants' legal fees would be properly subject to restitution as a "loss of property" under § 3663A(b)(1). Instead, they were convicted for misappropriating CMEEC funds by means of causing CMEEC to pay expenses for personal vacation travel to the Kentucky Derby and The Greenbrier. It was not the defendants' conduct underlying their offense of conviction that caused CMEEC to pay for the defendants' legal defense. After all, if the defendants had been acquitted of all charges, CMEEC would have been on the hook all the same to pay their defense fees (just as it did for DeMuzzio and Pryor, who were acquitted).

I am not persuaded by the contrary conclusion of *United States v. Hatfield*, 2015 WL 13385926, at *12. Although the court in *Hatfield* correctly concluded that the victim company lost property when it paid for the defendants' legal fees pursuant to an indemnification agreement, the court did not reckon with the further requirement of § 3663A(b)(1) that the loss of property must have resulted from the conduct underlying the offense of conviction rather than from an independent and after-the-fact duty to pay legal expenses under an indemnification

14

agreement. Indeed, absent this further requirement that the compensable loss of property under § 3663A(b)(1) have resulted from the conduct underlying the offense of conviction, the specific limitations on restitution for a victim's "other expenses" under § 3663A(b)(4) would be superfluous, because all of a victim's post-offense legal expenses relating in any way to a defendant could simply be recharacterized as a "loss of property" subject to restitution under § 3663A(b)(1).[26]

Lastly, neither the government nor CMEEC explain why Rankin, Sullivan, and Bilda should be made to pay for the defense costs for each other, much less for the defense costs of the acquitted co-defendants DeMuzzio and Pryor. The argument that one defendant should pay restitution for a company's payments for the legal defense of a co-defendant is inconsistent with the "bedrock principle that restitution should reflect the consequences of the defendant's own conduct." *Paroline v. United States*, 572 U.S. 434, 455 (2014).

Accordingly, I decline to enter an award of restitution for the fees paid by CMEEC for the legal defense of the five defendants. Because these fees do not qualify as a "loss of property" within the scope of § 3663A(b)(1) or as "other expenses" within the scope of § 3663A(b)(4), they are beyond what expenses may be subject to an order of criminal restitution under the MVRA.

---

[26] I note as well that another court has recently entered a restitution award that includes the costs incurred by a company to pay for a defendant's legal defense. *See United States v. Velissaris*, 2023 WL 4702049, at *9 (S.D.N.Y. 2023) (allowing for more than $20 million of restitution for company payment of defendant's legal fees). But this decision does not explain how such an award is consistent with the limitations of § 3663A(b)(1) and § 3663A(b)(4) as discussed in this ruling. At least two other district court decisions have allowed restitution pursuant to § 3663A(b)(4) for a company victim's payment of legal defense legal fees. *See United States v. Gupta*, 925 F. Supp. 2d 581, 585 (S.D.N.Y. 2013), *aff'd on other grounds*, 747 F.3d 111 (2d Cir. 2014); *United States v. Skowron*, 839 F. Supp. 2d 740, 747–49 (S.D.N.Y. 2012), *aff'd on other grounds*, 529 F. App'x 71 (2d Cir. 2013). But these rulings are not persuasive because they pre-date the Second Circuit's ruling in *Afriye*, which makes clear that "other expenses" under § 3663A(b)(4) must have been incurred in response to requests from the prosecution and in order to advance the prosecution.

### *Attorney fees incurred for participation in restitution proceedings*

CMEEC seeks $54,540 for outside counsel fees incurred in preparing its application for restitution and participation in restitution proceedings.[27] Such fees are indeed recoverable as "other expenses" under the MVRA. *See Afriye*, 27 F.4th at 173–74. But because CMEEC's fee application overbroadly seeks fees for expenses that are beyond the offense of conviction and well outside the scope of the MVRA (for all the reasons I have detailed above), I will again apply a discount to the fee application request to allow for CMEEC to recover only 50% of its requested amount. CMEEC is not entitled to restitution for the work of its outside counsel to seek reimbursement that is not allowed under the MVRA. Accordingly, I will award CMEEC restitution in the amount of $27,270 (50% of $54,540) for its costs of seeking restitution and participation in restitution proceedings.

### *Apportionment*

One additional consideration arises when as here a restitution order is to be imposed against more than one defendant: whether to hold each defendant jointly and severally liable for the full amount of restitution or whether to apportion the award in whole or in part among the several defendants. The restitution statute instructs that if a court "finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution *or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant*." 18 U.S.C. § 3664(h) (as incorporated by 18 U.S.C. § 3663A(d)) (emphasis added).

Thus, although a court is barred from considering the economic circumstances of a defendant when deciding the total amount of restitution to be ordered, 18 U.S.C. § 3664(f)(1)(A),

---

[27] Doc. #729 at 8–9.

16

§ 3664(h) makes clear that for cases involving multiple defendants the economic circumstances of a particular defendant as well as each defendant's relative culpability may inform a court's decision whether to apportion a restitution award among the several defendants rather than to make each defendant jointly and severally liable for the full restitution award. *See also United States v. Yalincak*, 30 F.4th 115, 122–24 (2d Cir. 2022) (discussing various apportionment options allowed under statute); *United States v. Kerekes*, 531 F. App'x 182, 184 (2d Cir. 2013) (affirming apportionment of $2 million of more than $50 million of total loss to one defendant based on that defendant's "relatively modest role" and in light of his actual gain from the unlawful scheme).[28]

I have considered the economic circumstances of the defendants as reflected in their financial statements.[29] Although the defendants are not destitute, they are not well positioned to pay a substantial restitution award. They have modest property holdings, rely largely on spousal and/or pension income, and their future earnings prospects have been decimated by this prosecution and their convictions.

I have also considered the defendants' relative culpability. Consistent with my findings at sentencing, Rankin is most responsible because he initiated and implemented the misappropriation of CMEEC funds for personal travel vacations. Sullivan was not the primary mover like Rankin, but as chairman of the board he was best positioned to have stopped the misuse of CMEEC's property before he left the company in late August 2015. Neither was Bilda

---

[28] The government's briefing notes the Court's duty to consider issues of apportionment. Doc. #702 at 3. Curiously, however, the defendants' restitution briefing does not seek apportionment despite the fact that they have strong arguments to make in light of their differing roles with respect to the offense of conviction and in light of their financial statements which reflect a lack of resources to pay the multi-million dollar restitution award that the government seeks. Therefore, because the government has flagged the issue and notwithstanding the absence of a request by the defendants for me to consider apportioning the restitution award, I will consider and address the issue of apportionment because it would likely be plain error for me not to do so.

[29] Doc. #614-4 (Rankin) (filed under seal); Doc. #618-4 (Sullivan) (filed under seal); Doc. #612-1 (Bilda) (filed under seal).

the primary mover but he was also a responsible board member and—along with Sullivan—a member of Rankin's inner circle as evidenced by their small group golfing trip to The Greenbrier resort in August 2015.

In my view, taking into account each of the defendant's economic circumstances and their relative culpability, it is appropriate to fully apportion the costs of restitution rather than to make each defendant joint and severally liable in whole or in part for the entire restitution award. *See Yalincak*, 30 F.4th at 122 (noting that "[i]n a scenario where two offenders caused a victim to incur a $100,000 loss, the court could require each defendant to pay the full $100,000 amount of the loss, or, if the defendants' divergent contributions to the crime make it reasonable to do so, the court could apportion the restitution obligation, ordering the defendant who played a lesser role in the offense to pay, for example, $25,000 in restitution and his more culpable co-defendant to pay $75,000").

I conclude that Rankin should be liable to pay 50% of the total restitution award, while Sullivan and Bilda should each be liable to pay 25% of the total restitution award. Although apportionment comes at some risk that CMEEC will not fully recover the restitution award, this is a consequence of apportionment as the statute allows. And I note as well that CMEEC has made almost no effort to recover trip expenses from other trip beneficiaries including some members of CMEEC's board of directors who took part in one or more trips and who even continue to serve as board members today. It is baffling why CMEEC has not sought reimbursement from other trip participants, especially those past and present fiduciaries who were well positioned to appreciate that the trips were an abusive and unlawful use of company funds.

*Calculation of restitution awards*

For the reasons set forth above, CMEEC is entitled to a total award of restitution in the amount of $748,800.63. This figure consists of $502,242.18 of the total of trip expenses incurred by CMEEC in 2015, plus the remaining qualifying attorney fee/cost expenses of $246,558.45 (*i.e.*, $219,288.45 for attorney fees incurred by CMEEC for its own representation and the representation of non-defendant employees or board members during the investigation and prosecution of this case, as well as $27,270 for attorney fees incurred by CMEEC to take part in restitution proceedings). In accordance with the apportionment principles discussed above, I conclude that Rankin should pay restitution of $374,400.31 (50% of the total restitution award) and that Sullivan and Bilda should each pay restitution of $187,200.16 (25% each of the total restitution award).

## CONCLUSION

The Court GRANTS in part and DENIES in part the government's motion for an order of restitution as set forth in this ruling (Doc. #702). The Court concludes that defendant Drew Rankin shall be liable to pay restitution in the total amount of **$374,400.31**, that defendant James Sullivan shall be liable to pay restitution in the total amount of **$187,200.16**, and that defendant John Bilda shall be liable to pay restitution in the total amount of **$187,200.16**. The government is requested to prepare and file proposed restitution orders for the Court's review and approval by **November 16, 2023**.

The Court DENIES as moot and unnecessary the defendants' motion to present additional witnesses regarding restitution (Doc. #719).

It is so ordered.

Dated at New Haven this 9th day of November 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge