UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES SULLIVAN,<br>    *Defendant*. | No. 3:18-cr-272 (JAM) |

**ORDER DENYING MOTION FOR RECONSIDERATION**

    Defendant James Sullivan has moved for reconsideration of the Court's order of criminal restitution. *See United States v. Rankin*, 2023 WL 7403638 (D. Conn. 2023). He asks the Court to re-apportion the restitution award so that he must pay about $100,000 less than what he has been ordered to pay.[1]

    There is no dispute about the legal standard that governs a motion for reconsideration. A court may grant a motion for reconsideration only if the movant shows that there was a clear error or manifest injustice and not because the movant merely wishes to vexatiously relitigate an issue already decided. *See Contant v. AMA Cap., LLC*, 66 F.4th 59, 67 (2d Cir. 2023).[2]

    By way of background, following the convictions of defendants Drew Rankin, James Sullivan, and John Bilda for criminal misappropriation of property belonging to the Connecticut Municipal Electric Energy Cooperative ("CMEEC"), I entered an order of restitution for CMEEC in the amount of $748,800.63.[3] The restitution calculation took into account three components of compensable expenses: (1) trip expenses to the Kentucky Derby and a luxury golf resort that the defendants wrongfully caused CMEEC to incur in 2015, (2) attorney fees and related costs incurred by CMEEC in response to requests by the prosecution during the

---

[1] Doc. #746 at 4.
[2] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[3] Doc. #740 at 19.

investigation and prosecution of the case, and (3) attorney fees incurred by CMEEC to prepare its application for restitution and take part in restitution-related proceedings.[4] For the trip expenses component of the restitution award, I ruled that all of the trip expenses were attributable to defendant Drew Rankin ($502,242.18), while lesser amounts were attributable to Sullivan ($104,765) and to Bilda ($213,782.18).[5]

I also decided to exercise my discretion to apportion the total restitution award. I ordered Rankin to pay 50% of the total award ($374,400.31) and Sullivan and Bilda to each pay 25% of the total award ($187,200.16 each).[6]

In deciding to apportion the restitution award, I explained how for multi-defendant criminal cases the Mandatory Victims Restitution Act ("MVRA") does not require a district court to make each defendant jointly and severally liable for a restitution award. Instead, a court has discretion to apportion a restitution award in accordance with each defendant's relative contribution to the victim's losses and each defendant's economic circumstances.[7]

As the Second Circuit has explained in the context of discussing a district court's authority to apportion a restitution award, "Congress has vested the district court with considerable discretion in fashioning restitution orders." *United States v. Yalincak*, 30 F.4th 115, 122 (2d Cir. 2022). The Second Circuit has rejected the arguments of criminal defendants who have tried to second-guess a district court's exercise of its discretion to apportion a restitution award. *See, e.g.*, *United States v. Ketabchi*, 832 F. App'x 41, 49 (2d Cir. 2020) (rejecting defendant's argument that "the court should have fashioned the co-defendants' restitution obligations differently" and "should have apportioned a lesser amount to him to reflect his lesser

---

[4] *Ibid.*
[5] *Id.* at 4–8.
[6] *Id.* at 16–18.
[7] *Id.* at 16–17.

2

role in the scheme and his economic circumstances," because "the MVRA plainly vests discretion in a court not to do so"); *United States v. Dalicandro*, 711 F. App'x 38, 43 (2d Cir. 2017) (rejecting defendant's challenge to district court's discretionary decision not to "assign[] a greater share of the mandatory restitution" to a co-defendant and instead to make the defendants jointly and severally liable).

As an initial matter, it is hard to see how Sullivan at this juncture can complain about how apportionment principles were applied to him. He failed in the first instance to argue for apportionment through multiple rounds of briefing and oral argument.[8] Despite Sullivan's failure to argue for apportionment, I decided *sua sponte* to exercise my discretion to apportion the restitution award for his and his co-defendants' benefit rather than to impose joint and several liability.[9]

Indeed, had I decided in my discretion to hold Sullivan jointly and severally liable with his co-defendants, then Sullivan would have been subject to a restitution award of at least $351,322.45 ($104,764 for the trip expenses personally attributable to him and then for attorney fee/cost expenses of $246,558.45 jointly attributable to all three defendants).[10] But by deciding to apportion the restitution award among the three defendants, I required Sullivan to pay only about half that amount—$187,200.16.[11] Yet despite receiving an immense discretionary benefit for which he never argued, Sullivan now complains it was no less than "clear error" not to further reduce his restitution obligation by about $100,000 to a final amount of $87,830.16.[12]

---

[8] *Id.* at 17 n.28 (noting the defendants' failure to argue for apportionment despite acknowledgement by the government in its briefing of the Court's authority to apportion the restitution award).
[9] *Ibid*.
[10] *Id.* at 7, 12, 16, 19.
[11] *Id.* at 19.
[12] Doc. #746 at 1, 4.

Nor can I overlook the unstated implications of Sullivan's argument. After all, he does not dispute that the MVRA requires a court to enter a total restitution order for the *full* amount of a victim's loss (regardless how a court might apportion the total award among several defendants), and he disclaims for now any challenge to the calculation of the total restitution award ($748,800.63).[13] So by arguing that he should have to pay $100,000 less, Sullivan necessarily seeks to make his co-defendants pay $100,000 more.

Sullivan's newfound argument for a further apportionment reduction relies on an assumption that he does little to explain: an assumption that, having chosen to apply a 25% multiplier to Sullivan for purposes of apportionment, I was legally required to individually apply the 25% multiplier to each one of the three components of the total restitution order (*i.e.*, trip expenses, CMEEC's attorney fees for responding to requests of the prosecution, and CMEEC's attorney fees for participation in restitution proceedings).[14] This approach would benefit Sullivan because, as explained above, the trip expenses attributable to Sullivan ($104,765) were less than the trip expenses attributable to Rankin ($502,242.18) and Bilda ($213,782.18).[15]

But Sullivan cites no language of the MVRA or any cases to support the proposition that a court—when exercising its broad discretion to apportion a restitution award—must choose a single multiplier discount and then mechanically apply that discount uniformly to *each distinct component* of a restitution award. Sullivan cites no authority that precludes a court from choosing in its discretion—as I did here—to apply an apportionment percentage to the *total*

---

[13] Doc. #746 at 2 (stating that "[f]or purposes of this motion for reconsideration, Mr. Sullivan does not object to the Court's determination of the total amount of restitution owed to CMEEC").
[14] *Id.* at 4 ("Instead of applying the 25% apportionment percentage that the Court determined was appropriate for Mr. Sullivan to the total amount of trip expenses paid by CMEEC in 2015 ($502,242.18)—approximately 80% of which the Court has determined were not losses attributable to Mr. Sullivan's offense of conviction—the Court should have applied it only to those trip expenses for which the Court found Mr. Sullivan was legally responsible.").
[15] Doc. #740 at 7.

award of restitution. Nothing in Sullivan's motion even acknowledges a court's discretion with respect to apportionment and fashioning a restitution order.

According to Sullivan, he should not be required to pay as much restitution as someone like Bilda who was found responsible for a larger amount of the wrongful trip expenses.[16] But that argument overlooks what the MVRA says. As I noted in my restitution order, the statute says a court "may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h). What this means is that there are two factors that are relevant to what degree a court should apportion a restitution award (if it chooses to apportion the award at all). The first is "the level of responsibility each defendant has for the victim or victims' losses." *Yalincak*, 30 F.4th at 122. And the second is each defendant's economic circumstances.

Start with the first factor—the defendants' comparative level of responsibility for the victim's loss. I decided at sentencing that Sullivan—in his role as chairman of the board of CMEEC—was at least as culpable as Bilda, even though Bilda took part in one more trip than Sullivan and thus technically had a higher attributable loss level. In contrast to Bilda who was a regular member of the CMEEC board of directors, Sullivan's role as chairman of the board of directors led me to increase his sentencing offense level for abuse of a position of trust.[17] I described at sentencing how Sullivan personally "greenlighted" Rankin's proposed misappropriation of CMEEC funds for a golfing vacation at The Greenbrier (telling Rankin in response "Is your name 'I deserve a raise?'") and how Sullivan's unique role as board chairman

---

[16] Of course, Bilda's attributable trip expenses of $213,782.18—though higher than Sullivan's attributable trip expenses of $104,765—were less than Rankin's attributable trip expenses of $502,241.18. Doc. #740 at 7. So Bilda could make the same argument as Sullivan now makes for a reduction in his restitution at Rankin's expense but has not done so.
[17] Doc. #705 at 85–86.

enabled him to invite the largest number of non-CMEEC guests—including most outrageously his bartender from Washington, D.C.—to attend the 2015 Kentucky Derby at CMEEC's expense.[18]

At Sullivan's sentencing I described how he chose to misuse CMEEC's funds in "satisfaction of personal consumption desires" rather "than any kind of responsible stewardship."[19] Then the next day at Bilda's sentencing I noted that it was appropriate to sentence Bilda to the same term of imprisonment as Sullivan because "even though your loss level is a bit higher[,] [y]ou weren't the chairman of a board."[20]

And as I noted in my restitution order, "Sullivan was not the primary mover like Rankin, but as chairman of the board he was best positioned to have stopped the misuse of CMEEC's property before he left the company in late August 2015."[21] All in all, notwithstanding that Sullivan had a lesser amount of trip-expense losses attributed to him than Bilda, his criminal conduct contributed at least as must as Bilda to CMEEC's losses.

Turn now to the second discretionary apportionment factor—the defendants' relative economic circumstances. Sullivan has a business degree and for many years lived a high-flying career as a vice-president for a major financial firm, a candidate for the United States Congress, and a government relations consultant with substantial connections to Washington, D.C.[22] Although his consulting business has gravely suffered because of this prosecution, his financial statement reflects a positive monthly income with considerable assistance from his spouse and

---

[18] *Id.* at 50, 85–86.
[19] *Id.* at 72.
[20] Doc. #706 at 116.
[21] Doc. #740 at 17.
[22] Doc. #693 at 21 (¶ 85), 25–26 (¶¶ 109–117) (Sullivan revised presentence report).

substantial assets beyond his liabilities in terms stocks, bank accounts, jewelry, vehicles, properties, and retirement accounts.[23]

By contrast, Bilda now makes a living by driving a dump truck and replacing septic systems.[24] Bilda struggles with alcoholism and depression as shown by his attempt to take his own life after he was charged in this case.[25] And although Bilda's financial statement reflects assets and a positive monthly income, his major source of income—his public pension from decades of service to the City of Norwich—is in jeopardy of revocation.[26] All in all, Sullivan is at least as well positioned as Bilda to pay restitution.

So when the actual relevant statutory factors are considered (which Sullivan has made no attempt to do), it was not "clear error" to hold Sullivan liable to pay the same amount of restitution as Bilda. And the same holds true for any comparison Sullivan could attempt to make as to Rankin. I will not go through the relevant analysis again because Sullivan himself has failed to do so. It suffices to say that the fact that Rankin's attributable trip expenses were more than twice the expenses attributed to Sullivan did not mean that it was "clear error" to decide that Sullivan should pay restitution for half the amount imposed on Rankin.

Sullivan further argues that unless I reduce his restitution award by $100,000, he will be unlawfully required to pay restitution for costs beyond his offense of conviction.[27] It is hard to make any sense at all of this argument. The restitution ruling discussed and applied the important limiting principle that a defendant cannot be made to pay restitution to a victim for losses that are not attributable to the defendant's conduct for which he was convicted.[28] And even after applying

---

[23] *Id.* at 27 (¶ 133).
[24] Doc. #706 at 84.
[25] *Id.* at 86, 112–13.
[26] *Id.* at 86–87; Doc. #679 at 31–32 (¶¶ 124–25) (Bilda revised presentence report).
[27] Doc. #746 at 3.
[28] Doc. #740 at 3.

this limiting principle, I ultimately had discretion—as discussed above—to require Sullivan to be jointly and severally liable with his co-defendants for at least as much as $351,322.45. I ended up requiring Sullivan to pay only about half that amount. Sullivan does not explain how requiring him to pay only about half of what he could have been ordered to pay means that he was subject to restitution on the basis of conduct for which he was not convicted.

In short, Sullivan does not show that it was "clear error" to require him to pay 25% of the total restitution award. Instead, he seeks to re-litigate an issue already decided and to press arguments that he could have but failed to make in the first place.

The Court DENIES the motion for reconsideration (Doc. #746).

It is so ordered.

Dated at New Haven this 21st day of November 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge